**UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE**

MIKHAIL MOISEEV,

        Petitioner,

v.

NATHALIE R. ASHER, Field Office Director, *et al.*,

        Respondents.

Case No. C11-1491-MJP-BAT

**REPORT AND RECOMMENDATION**

## I. INTRODUCTION AND SUMMARY CONCLUSION

Petitioner Mikhail Moiseev is a native and citizen of Russia who is being detained by the United States Immigration and Customs Enforcement ("ICE") pursuant to a final order of removal. On September 9, 2011, petitioner filed a pro se Petition for Writ of Habeas Corpus pursuant to 28 U.S.C. § 2241, which challenges the constitutional and statutory authority of ICE to detain him any further due to the unlikelihood of his removal from the United States in the reasonably foreseeable future. (Dkt. No. 7.) He requests that this Court "[o]rder the ICE to release Petitioner from its custody immediately (under reasonable conditions of supervision)." *Id*. at 5. Respondents have filed a Return Memorandum and Motion to Dismiss, arguing that petitioner is lawfully detained pursuant to Section 241(a)(1)(C) of the Immigration and

REPORT AND RECOMMENDATION - 1

Nationality Act, 8 U.S.C. § 1231(a)(1)(C), because of his continued refusal to complete a travel document application and his rigorous efforts to prevent ICE from removing him. (Dkt. No. 11 at 9.)

After careful review of the entire record, the Court recommends that respondents' motion to dismiss be **GRANTED**, and that this matter be **DISMISSED** with prejudice.

## II. BACKGROUND AND PROCEDURAL HISTORY

Petitioner is a native and citizen of Russia who was admitted to the United States on or about November 1, 1991, as a B-2 visitor for pleasure with authorization to remain in the United States for a temporary period not to exceed April 30, 1992. (Administrative Record ("AR") at R27, R624-25, R456.) Petitioner remained in the United States beyond April 30, 1992, without authorization. (AR at L89.) On or about October 5, 1992, petitioner was served with an Order to Show Cause ("OSC") charging him with removability for overstaying his visa. (AR at R25-27.)

At the hearing before the Immigration Court, petitioner admitted the charges contained in the OSC, but requested relief under the Immigration and Nationality Act ("INA") instead of deportation. (AR L276.) On December 19, 2003, the Immigration Judge ("IJ") denied petitioner's request for asylum, withholding of removal, adjustment of status, and relief under the Convention Against Torture, and ordered him removed to Russia based on the charges contained in the OSC. (AR at L90, L270-76.) Petitioner appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), which affirmed the IJ's decision and dismissed the appeal on April 9, 2004. (AR at L277.)

On December 24, 2003, ICE requested a travel document from the Consulate General of Russia for petitioner's removal to Russia. (AR at R303.) On April 28, 2004, petitioner was interviewed by a representative of the Consulate. (AR at R277-78.) Petitioner was released into

1  the Intensive Supervision Appearance Program ("ISAP") while his travel document request was

2  pending.  (AR at L115, 212.)  On or about March 5, 2005, however, petitioner's release was

3  terminated after he absconded from ISAP.  (AR at L112-13, R483.)  On April 30, 2008,

4  petitioner was discovered at the San Mateo County Jail where he was incarcerated pending state

5  criminal charges.  (AR at R412.)  Petitioner was transferred from the San Mateo County Jail to

6  ICE custody on September 28, 2009.  (AR at R600, 625.)  ICE subsequently resumed its efforts

7  to obtain a travel document from the Russian Consulate for petitioner's removal.  (AR at R483,

8  598.)

9       On December 11, 2009, ICE conducted a Post Order Custody Review of petitioner's

10 case.  (AR at 482-601.)  ICE recommend that petitioner remain detained, noting:

> [Petitioner] intentionally hindered his removal from the U.S. by providing false
> information on his travel document application and his history of absconding
> indicate he presents an unacceptable flight risk if released.  [Petitioner] has a
> lengthy criminal history including narcotics, property, financial, and identity fraud
> crimes.  His release would present an unacceptable danger to the community.  The
> latest travel document application packet submitted to the Russian consulate
> includes a copy of his expired Russian passport.  Obtaining a new travel
> document is foreseeable upon [petitioner's] willingness to provide his correct
> address in Russia.  I recommend that [petitioner's] detention continues for an
> additional 90 days.

17 (AR at R483.)

18      On December 15, 2009, the Russian Consulate issued a travel document for petitioner's

19 removal which was valid from December 23, 2009 to January 6, 2010.  (Dkt. No. 11, Ex. A, ¶6.)

20 ICE scheduled petitioner to be removed on December 29, 2009, however, on the day of travel,

21 petitioner "balled up in the fetal position and began to cry, refusing to get off the floor, stating

22 that he did not wish to go back to Russia."  *Id.* at ¶7.  A decision to cancel the removal was made

23 after petitioner refused to board the aircraft.  (AR at R513, 598.)

REPORT AND RECOMMENDATION **-** 3

On February 17, 2010, the Russian Consulate issued a second travel document request which was valid from February 17, 2010, to March 3, 2010. (AR at R515.) On February 22, 2010, ICE attempted to remove petitioner a second time, however, petitioner "cut[] himself, while booking out at the Bakersfield ICE office, with a razor blade that was obtained from the detention center in Kern County Jail. Petitioner's injuries required emergency medical attention, and the removal was cancelled." (Dkt. No. 11, Ex. A, ¶9.)

On March 2, 2010, ICE submitted a new travel document request to the Russian Consulate. (AR at R524, 595.) In response, the Consulate advised ICE that petitioner would need to submit a new travel document application "by himself and sign it." (AR at R525, 595.) However, petitioner has refused to cooperate by filling out a new travel document application. (Dkt. No. 11, Ex. A, ¶10.) Specifically, petitioner was presented with and refused to complete a travel document application on March 5, 2010, April 2, 2010, April 15, 2010, April 28, 2010, January 20, 2011, March 22, 2011, April 1, 2011, July 19, 2011, August 18, 2011, and September 26, 2011. *Id.* at ¶11. Accordingly, ICE served petitioner with notices Warning of Failure to Depart and Instruction Sheet to Detainee Regarding Requirement to Assist in Removal, which petitioner refused to sign. (AR at R544-45, 563-64, 606-07, 628-39, 640-41, 646-47, 654-55, 667-70.)

On July 18 2011, ICE issued a Notice of Failure to Comply Pursuant to 8 C.F.R. 241.4(g) stating, in part, as follows:

> On June 10, 2011, you were advised, via form I-229(a) and Instruction Sheet to Detainee, of specific requirements to complete and were given 30 days to comply with your obligation to assist in obtaining a travel document. In addition to the I-229(a) and Instruction Sheet to Detainee served to you on June 10, 2011, you were served an I-229(a) and Instruction Sheet on May 12, 2011, March 22, 2011, January 20, 2011, January 14, 2011, April 2, 2010, March 5, 2010, and October 5, 2009.

> Although you have been explained your requirements to assist ICE in obtaining travel documents, you have continuously taken steps to prevent your removal from the United States to Russia. On numerous occasions, you have failed to complete the required travel document application, which is required by your country, in order to facilitate your removal; you displayed disruptive behavior when ICE agents attempted to place you on your flight on December 29, 2009; on February 22, 2010, you inflicted injury upon yourself in order to prevent your removal. To this day, you still refuse to cooperate.
>
> The burden to obtain a travel document for you removal does not solely rest with ICE. Pursuant to Section 241(a)(1)(C) of the [INA], you are required to make timely and good faith efforts to obtain travel or other documents necessary for your removal from the United States. If you fail to make these efforts, Section 241(a)(1)(C) allows for the extension of the removal period.
>
> As you are still within the removal period, you are to remain in ICE custody until you demonstrate that you are making reasonable efforts to comply with the order of removal and that you are cooperating with ICE's efforts to remove you.

(AR at 648-50.)

June 10, 2011, ICE informed the Russian Consulate that petitioner has refused to complete a new travel document application. (Dkt. No. 11, Ex. A, ¶12.) In response, the Consulate indicated that it would accept the submission of the old travel document application, the previously issued travel document, photos, and cover letter for review. The Consulate further indicated that "the issuance of a new travel document was highly likely given the issuance of the previous travel document." *Id*.

ICE reports, however, that petitioner has indicated he will refuse to board any plane bound for Russia, and has stated that "he would like to see ICE try putting him on a flight to Russia." *Id*. at ¶14. "Consequently, ICE does not believe it would be prudent or productive to resume a travel document request until it is satisfied that Petitioner's removal will be effectuated as scheduled." *Id*. Instead, ICE is seeking to arrange to transport petitioner aboard a non-commercial charted flight dedicated to transporting individuals for government purposes. *Id*. at

REPORT AND RECOMMENDATION **-** 5

¶15. Although the timeframe for securing a chartered flight is unknown, ICE has submitted a request to the Travel Document Unit at ICE headquarters in Washington, D.C. *Id*. ICE indicates that if petitioner decides to cooperate or a charter flight becomes available, ICE will resubmit a request for a travel document to the Russian Consulate. *Id*. ICE indicates that, aside from petitioner's refusal to complete the required travel document application, there are currently no barriers to petitioner's removal. *Id*. at ¶13.

### III. DISCUSSION

Section 241(a)(1)(A) of the INA states that "[e]xcept as otherwise provided in this section, when an alien is ordered removed, the Attorney General shall remove the alien from the United States within a period of 90 days (in this section referred to as the 'removal period')." INA § 241(a)(1)(A), 8 U.S.C. § 1231(a)(1)(A). During the removal period, continued detention is required. INA § 241(a)(2), 8 U.S.C. § 1231(a)(2)("During the removal period, the Attorney General shall detain the alien."). Under Section 241(a)(6), the Attorney General may detain an alien beyond the 90-day removal period. INA § 241(a)(6), 8 U.S.C. § 1231(a)(6).

In *Zadvydas v. Davis*, 533 U.S. 678, 121 S. Ct. 2491, 2505, 150 L. Ed. 2d 653 (2001), the Supreme Court considered whether the post-removal-period statute, INA § 241(a)(6), authorizes the government "to detain a removable alien *indefinitely* beyond the removal period or only for a period *reasonably necessary* to secure the alien's removal." *Zadvydas,* 533 U.S. at 682. The petitioners in *Zadvydas* could not be removed because no country would accept them. Thus, removal was "no longer practically attainable," and the period of detention at issue was "indefinite" and "potentially permanent." *Id.* at 690-91. The Supreme Court held that INA § 241(a)(6), which permits detention of removable aliens beyond the 90-day removal period, does not permit "indefinite detention." *Id.* at 689-697. The Court explained that "once removal is no

longer reasonably foreseeable, continued detention is no longer authorized by statute." *Id.* at 699. The Supreme Court further held that detention remains presumptively valid for a period of six months. *Id.* at 701. After this six-month period, an alien is eligible for conditional release upon demonstrating "good reason to believe that there is no significant likelihood of removal in the reasonably foreseeable future." *Id.* at 701. The burden then shifts to the Government to respond with sufficient evidence to rebut that showing. *Id*. at 701.

Notwithstanding *Zadvydas*, under INA § 241(a)(1)(C), 8 U.S.C. § 1231(a)(1)(C), "the removal period shall be extended . . . and the alien may remain in detention during such extended period if the alien fails or refuses to make timely application in good faith for travel or other documents necessary to the alien's departure . . . ." In *Pelich v. INS*, 329 F.3d 1057, 1059 (9th Cir. 2003), the Ninth Circuit held that "when an alien refuses to cooperate fully and honestly with officials to secure travel documents from a foreign government, the alien cannot meet his or her burden to show there is no significant likelihood of removal in the reasonably foreseeable future." The Ninth Circuit explained that the concerns of indefinite detention underlying the Supreme Court's decision in *Zadvydas* do not exist when the alien "has the 'keys [to his freedom] in his pocket' and could likely effectuate his removal by providing the information requested by the [Government]." *Pelich*, 329 F.3d at 1060 (citation omitted)*; see also Lema v. I.N.S.*, 341 F.3d 853, 857 (9th Cir. 2003)(holding that INA § 241(a)(1)(C) authorizes continued detention of a removable alien as long as the alien fails to cooperate fully and honestly with officials to obtain travel documents). The Court concluded that "*Zadvydas* does not save an alien who fails to provide requested documentation to effectuate his removal. The reason is self-evident: the detainee cannot convincingly argue that there is no significant likelihood of removal in the reasonably foreseeable future if the detainee controls the clock." *Id.*

In the present case, the evidence clearly establishes that petitioner has failed to cooperate with his removal. Petitioner's continued refusal to complete a new travel document application and his disruptive and dangerous behavior have prevented the government from effecting his removal from the United States to Russia. Given petitioner's lack of cooperation, he cannot satisfy his burden under *Zadvydas* to show that there is no significant likelihood of removal in the reasonably foreseeable future. *See Pelich,* 359 F.3d at 1057. Indeed, "[w]e cannot know whether an alien's removal is a 'remote possibility,' *Zadvydas*, 533 U.S. at 690, 121 S. Ct. 2491, until the alien makes a full and honest effort to secure travel documents. A particular alien may have a very good chance of being removed, but if that alien is refusing to cooperate fully with officials to secure travel documents, neither the INS nor a court can sensibly ascertain the alien's chance of removal." *Lema*, 341 F.3d at 856. As the Ninth Circuit found in *Pelich*, petitioner has the keys to his freedom in his pocket and could likely effectuate his removal by providing evidence of his identity. *Pelich*, 329 F.3d at 1060. Accordingly, petitioner's detention is not indefinite, and the Court must deny habeas relief.

## IV. CONCLUSION

For the foregoing reasons, the Court recommends that respondents' motion to dismiss be **GRANTED**, and that this matter be **DISMISSED** with prejudice. A proposed order accompanies this Report and Recommendation.

DATED this 21st day of December, 2011.

BRIAN A. TSUCHIDA
United States Magistrate Judge